CLERK'S OFFICE U.S. DIST. COURT
AT HARRISONBURG, VA
FILED

April 30, 2025

LAURA A. AUSTIN, CLERK
BY: s/J.Vasquez
DEPUTY CLERK

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
## ROANOKE DIVISION

| | | |
|---|---|---|
| **DURWIN EVANT BONDS, JR.,** | ) | |
| **Plaintiff,** | ) | **Case No. 7:23-cv-00583** |
| | ) | |
| **v.** | ) | |
| | ) | **By: Michael F. Urbanski** |
| **HAROLD W. CLARKE, et al.,** | ) | **Senior United States District Judge** |
| **Defendants.** | ) | |

## MEMORANDUM OPINION AND ORDER

Durwin Evant Bonds, Jr., a Virginia inmate proceeding pro se, filed this civil action under 42 U.S.C § 1983 against Harold Clarke, the former Director of the Virginia Department of Corrections (VDOC), and 27 individuals employed at Red Onion State Prison (Red Onion). The case is presently before the court for review under 28 U.S.C. § 1915A(a). For the reasons stated below, a number of claims will be dismissed without prejudice for failure to state a claim upon which relief may be granted. This case will proceed on the remaining claims arising from a cell extraction and transfer that occurred on July 4, 2023, during which correctional officers allegedly used excessive force. The other remaining claims will be severed into separate actions pursuant to Federal Rule of Civil Procedure 21.

### I.    Summary of Allegations and Claims

The court has reviewed all of the allegations in the 60-page handwritten complaint. For the sake of brevity, the court will not recite all of the allegations here. Instead, the court will summarize the allegations necessary to provide context for Bonds's various claims.

Bonds is a Sunni Muslim inmate who was previously incarcerated at Red Onion. His claims primarily stem from a series of events that occurred at the prison in July and August

2023, after Bonds engaged in a hunger strike. Bonds alleges that he initiated the hunger strike because prison staff did not deliver water hot enough to mix with certain foods served as part of the sealed religious diet (SRD), including noodles and cereal. Compl., ECF No. 1, at 3.

On the morning of July 4, 2023, while still participating in the hunger strike, Bonds refused to accept his breakfast meal. Sgt. Allen spoke to Bonds about the hunger strike and warned him that he would be taken to the medical unit if he skipped additional meals. At approximately 3:10 p.m., Bonds was offered a "freeze dried meal" consisting of "soy and rice or soy and noodles." Id. at 4. When Bonds asked where his hot water was, Correctional Officer Dotson suggested that he use hot water from the sink. Bonds replied that he would not be eating the meal offered to him, and the correctional officer left the pod with the meal tray. Id.

Approximately 20 minutes later, Warden Rick White ordered a cell extraction team to forcibly move Bonds to a cell in the medical unit. Id. at 40. The extraction team included more than ten correctional officers, including Dotson and Sgt. Bentley. Id. at 4–5. Bonds ultimately agreed to cooperate after an officer pulled out a can of pepper spray and threatened to use it. Id. at 5. Bonds alleges that Bentley intentionally failed to lock the handcuffs placed on him during the restraint process and that officers forced him to kneel even though he was unable to do so due to a disabling knee impairment. Id. at 6. When Bonds attempted to use his mattress to protect his knees, Bentley pulled on the strap attached to the handcuffs, causing the handcuffs to tighten and cut Bonds's wrists. Officers then sprayed pepper spray into the cell, "even though Bonds cuffed up peacefully and willingly." Id. at 8. After entering the cell, the extraction team physically assaulted Bonds. Bonds alleges that officers kneed him in the face, pulled his hair, slammed his face on the floor, and slammed his body against a wall. See

id. He further alleges that he was transported to the medical unit in a defective wheelchair used as a "torture device," that officers intentionally pulled on his leg restraints in an effort to harm him, and that officers continued to assault him after he arrived in the medical unit. Id. at 10. Bonds was eventually placed in a "dirty cold cell with nothing but a mattress," and all of his clothes were removed with the exception of his t-shirt and underwear. Id. at 11. He remained in the medical unit until July 5, 2023. See id. at 13. Bonds alleges that Nurse Practitioner L. Jessee failed to adequately examine him and suggested that he was injured for "showing his ass." Id. at 26.

Around the same time, Bonds was charged with the disciplinary offense of simple assault upon a non-offender. Sgt. Bentley reported that Bonds had caused him to scrape his hand on the tray slot during the cell extraction on July 4, 2023. Bonds alleges that he requested witnesses and documentary evidence during the disciplinary process and that Hearing Officer K.D. Ramey denied his requests "due to her dismissing the charge based upon unknown service violations." Id. at 12.

On July 18, 2023, Bonds was housed in the A4 pod at Red Onion. While participating in pod recreation, inmate C. Chatman argued with Bonds about a PREA[1] complaint that Bonds had filed against another inmate for engaging in sexual misconduct. Bonds alleges that Correctional Officer J. Eldridge witnessed the argument and proceeded to unshackle Chatman's legs while escorting Chatman back to his cell. Chatman then walked over to Bonds and spit saliva in his face. The saliva got in Bonds's mouth, and he responded by spitting it

---

[1] PREA is an acronym for the Prison Rape Elimination Act, 34 U.S. §§ 30301–30309.

out. Id. at 13. Bonds alleges that Eldridge directed Chatman to spit on him and that Lt. C. Stanley failed to provide adequate protection. Id. at 13, 21, 24. Bonds further alleges that Eldridge charged him "with a severe charge . . . for spitting out Chatman's saliva" and that Hearing Officer J. Adams improperly convicted him of the charged offense. Id. at 14.

On July 20, 2023, Correctional Officer Branham delivered Bonds an SRD tray without providing "180 degree water to cook his freeze dried meal." Id. Bonds requested hot water to prepare the "main course." Id. Branham claimed that water was on the way and closed the tray slot. Approximately ten minutes later, Branham and Correctional Officer D. Mullins returned to retrieve the tray even though Bonds had not yet received any hot water or had enough time to eat his food. Bonds demanded to speak to a supervisor. When the officers attempted to close the tray slot without giving him enough time to eat, Bonds placed his hands in the tray slot to prevent the officers from closing it. Branham eventually called for a supervisor, and Lt. Williams made the correctional officers retrieve hot water for Bonds. Bonds alleges that Branham then charged him with the disciplinary offense of tampering with a security device. Id. at 14–15. Bonds further alleges that Hearing Officer Ramey conducted a "biased hearing" on the charge on August 21, 2023, and that she denied his request to call Lt. Williams as a witness and his requests for video footage and other evidence. Id. at 39.

Bonds also refers to unrelated disciplinary hearings conducted at Red Onion that resulted in the imposition of monetary fines. He alleges that Hearing Officer Adams imposed a $6.00 fine for disobeying an order to return to general population on May 4, 2023, and that Adams imposed a $4.00 fine for possession of contraband on March 26, 2023. Id. at 26. Similarly, Bonds alleges that Hearing Officer Ramey "excessively" fined him $3.00 for

disobeying a direct order to return to general population on May 24, 2023, and that Ramey imposed another fine on June 22, 2023. Id. at 26–27.

In the "Claims" section of the complaint, Bonds sets forth four separate counts. Count One seeks relief for alleged violations of his right to due process. Id. at 27–39. Count Two seeks relief for "excessive fining." Id. at 39. Count Three, titled "Cruel and Unusual Punishment Inflicted," asserts claims of excessive force and deliberate indifference in violation of the Eighth Amendment. Id. at 40–49. Count Four sets forth various claims of "discrimination," including religious discrimination and disability discrimination. Id. at 49–53. Bonds also refers to retaliation in various portions of each count. See, e.g., id. at 28 (alleging that Harold Clarke and Rick White allowed subordinate prison officials to withhold meals in retaliation for his "peaceful demonstration"). Additionally, in the opening paragraph of the complaint, Bonds alleges that "each defendant, in their individual capacity, . . . discriminate[d] against the plaintiff based upon . . . race, color, sex or national origin." Id. at 1.

## II.    Legal Standards

### A.    Preliminary Review

The court is required to review a complaint in a civil action in which an inmate seeks redress from a governmental entity or an officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The court must "dismiss the complaint, or any portion of the complaint," if it is "frivolous, malicious, or fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915A(b)(1). To survive dismissal for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly,

550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

A complaint filed by a pro se litigant must be construed liberally. King v. Rubenstein, 825 F.3d 206, 214 (4th Cir. 2016). "Principles requiring generous construction of pro se complaints are not, however, without limits." Beaudett v. City of Hampton, 775 F.2d 1274, 1278 (4th Cir. 1985). A pro se complaint "still must contain enough facts to state a claim for relief that is plausible on its face." Thomas v. Salvation Army S. Terrace, 841 F.3d 632, 637 (4th Cir. 2016).

## B.    Joinder

"The Federal Rules of Civil Procedure place limits on a plaintiff's ability to join multiple defendants in a single pleading." Simpson v. Youngkin, No. 3:23-cv-00032, 2024 WL 943456, at *2 (E.D. Va. Mar. 5, 2024) (citing Fed. R. Civ. P. 20(a)). Under Rule 20, defendants may be joined in a single action only if: (1) "any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out the same transaction, occurrence, or series of transactions or occurrences"; and (2) "any question of law or fact common to all defendants will arise in the same action." Fed. R. Civ. P. 20(a). Courts have explained that Rule 20 generally permits joinder of "reasonably related claims for relief . . . against different parties." Courthouse News Serv. v. Shaefer, 2 F.4th 318, 325 (4th Cir. 2021) (quoting Mosley v. Gen. Motors Corp., 497 F.2d 1330, 1333 (8th Cir. 1974)). The rule "does not authorize a plaintiff to add claims against different parties that present entirely different factual and legal issues."

Sykes v. Bayer Pharms. Corp., 548 F. Supp. 2d 208, 218 (E.D. Va. 2018) (internal quotation marks omitted).

Although "[m]isjoinder of parties is not a ground for dismissing an action," a district court "may at any time, on just terms, add or drop a party" or "sever any claim against a party." Fed. R. Civ. P. 21. Under Rule 21, district courts have "virtually unfettered discretion in determining whether or not severance is appropriate." 17th St. Assocs., LLP v. Markel Int'l Ins. Co., 373 F. Supp. 2d 584, 598 n.9 (E.D. Va. 2005) (internal quotation marks omitted); see also Spencer, White & Prentis, Inc. v. Pfizer, Inc., 498 F.2d 358, 361 (2d Cir. 1974) (recognizing that "justification for severance is not confined to misjoinder of parties"). The rules governing joinder and severance apply with equal force to pro se prisoner cases. Courts have emphasized that "unrelated claims against different defendants belong in separate lawsuits, not only 'to prevent the sort of morass' produced by multi-claim, multi-defendant suits . . . , but also to ensure that prisoners pay all fees required under the Prison Litigation Reform Act." Owens v. Hinsley, 635 F.3d 950, 952 (7th Cir. 2011) (quoting George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007)); see also Daker v. Head, 730 F. App'x 765, 768 (11th Cir. 2018) (explaining that a district court should have exercised its authority to dismiss improper defendants or sever unrelated claims since the pro se plaintiff asserted unrelated claims against unrelated defendants); Wheeler v. Wexford Health Sources, Inc., 689 F.3d 680, 683 (7th Cir. 2012) (emphasizing that "[a] litigant cannot throw all of his grievances, against dozens of different parties, into one stewpot").

### III.    Discussion

### A.    Dismissal of Claims under 28 U.S.C. § 1915A(b)(1)

Bonds seeks relief under 42 U.S.C. § 1983 for alleged violations of his federal constitutional rights. Section 1983 imposes liability on any person who, under color of state law, deprives another person "of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." West v. Atkins, 487 U.S. 42, 48 (1988). Additionally, because liability is "determined person by person," a plaintiff must show that "each Government-official defendant, through the official's own individual actions, has violated the Constitution." King v. Riley, 76 F.4th 259, 269 (4th Cir. 2023) (internal quotation marks omitted).

### 1.    Meal-Related Claims Asserted in Count One

Bonds asserts meal-related due process claims as part of Count One. The Due Process Clause of the Fourteenth Amendment prohibits a state from "depriv[ing] any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV. "To establish that a government actor violated this proscription, 'a plaintiff must (1) identify a protected liberty or property interest and (2) demonstrate deprivation of that interest without due process of law.'" Cartagena v. Lovell, 103 F.4th 171, 182 (4th Cir. 2024) (quoting Prieto v. Clarke, 780 F.3d 245, 248 (4th Cir. 2015)).

Bonds claims that 18 defendants violated his right to due process by failing to provide adequately hot water with the SRD tray delivered to him on the afternoon of July 4, 2023. See Compl. at 28–29. Bonds further asserts that the food provided on the meal tray was not edible and that defendants deprived him of due process by instructing him to use hot water from the

8

sink in his cell. Id. at 31–32. Similarly, Bonds asserts that various defendants deprived him of due process on July 20, 2023, by only giving him "10 minutes to eat his food when policy requires 20 minutes" and by not delivering him hot water until ordered to do so by a supervisor. Id. at 36–39. Bonds claims that the defendants' actions were a form of "disciplinary sanction" and that defendants Harold Clarke and Rick White were responsible for their subordinates' misconduct. Id. at 27–28.

Bonds has not plausibly alleged that the defendants deprived him of a liberty interest protected by the Due Process Clause. "In the carceral context, a prisoner claiming a violation of his right to procedural due process must show: (1) that there is a state statute, regulation, or policy that creates such a liberty interest, and (2) that the denial of such an interest imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Shaw v. Foreman, 59 F.4th 121, 127 (4th Cir. 2023) (internal quotation marks omitted). "Satisfying these requirements is a difficult task, and intentionally so." Desper v. Clarke, 1 F.4th 236, 247 (4th Cir. 2021).

Even if the court were to assume that Bonds could meet the first requirement, his allegations are insufficient to satisfy the second requirement. In short, the allegations in the complaint do not plausibly suggest that the meal-related issues Bonds experienced were "so atypical that exposure to them . . . imposed a significant hardship in relation to the ordinary incidents of prison life." Beverati v. Smith, 120 F.3d 500, 504 (4th Cir. 1997) (concluding that inmates possessed no liberty interest in avoiding conditions of confinement for six months that included being served cold food in considerably smaller portions than those served to inmates in general population); see also Sanchez v. Allen, 611 F. App'x 792, 795 (5th Cir. 2015)

(concluding that an inmate's placement on the food-loaf diet for seven days did not implicate a liberty interest); <u>Russell v. Wilkinson</u>, 79 F. App'x 175, 178 (6th Cir. 2003) (holding that the discontinuation of an inmate's kosher meals did not amount to an atypical and significant hardship). Because the meal-related allegations do not implicate a protected liberty interest, Bonds has no viable due process claim predicated on the failure to provide hot water from the kitchen or the failure to allow him more than ten minutes to eat. Accordingly, these claims must be dismissed.

### 2.    Retaliation Claims Asserted in Count One Against Clarke and White

As part of Count One, Bonds alleges that Clarke and White were responsible for their subordinates' misconduct in their respective roles as Director of the VDOC and Warden of Red Onion, and that they "allow[ed]" the subordinates under their authority to "withhold meals . . . as a disciplinary sanction in retaliation" for Bonds's "peaceful demonstration of moral certainty." Compl. at 27–28, 30. Similarly, Bonds alleges that Clarke, as the Director of the VDOC, "allow[ed] his subordinates, under his authority, to use food as a disciplinary measure by denying Bonds his religious diet and [the ability] to prepare it like general population, . . . as retaliation for [his] peaceful protest for moral certainty." <u>Id.</u> Bonds also alleges that Clarke "allow[ed] his subordinates under his authority to retaliate against Bonds for his peaceful demonstration . . . by utilizing inmate C. Chatman" against him. <u>Id.</u> at 33.

It is well settled that supervisory officials cannot be held vicariously liable under § 1983 for the actions of subordinate employees. <u>See</u> <u>Iqbal</u>, 556 U.S. at 676 ("Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of <u>respondeat</u> <u>superior</u>."). "Because vicarious liability is inapplicable to . . . § 1983 suits, a

plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."). "Put differently, 'each Government official, his or her title notwithstanding, is only liable for his or her own misconduct.'" <u>King</u>, 76 F.4th at 269 (quoting <u>Iqbal</u>, 556 U.S. at 677). Thus, "a complaint must contain specific allegations of each individual's conduct and state of mind." <u>Id.</u>

Bonds's allegations against Clarke and White do not satisfy this requirement. The conclusory assertion that these supervisory officials "allowed" their subordinate employees to withhold meals or take other actions in retaliation for protesting is insufficient to state a claim upon which relief may be granted. <u>See id.</u> at 269 (holding that a plaintiff's "boilerplate" allegations against supervisory officials did not state a claim for relief); <u>Hoffman v. Office of the State Atty.</u>, 793 F. App'x 945, 954 (11th Cir. 2019) ("Because the plaintiff's claims of supervisory liability are supported by conclusory allegations, the complaint does not contain sufficient factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."); <u>Keen v. SVRJA</u>, No. 7:22-cv-00102, 2023 WL 2042482, at *5 (W.D. Va. Feb. 16, 2023) (holding that the vague and conclusory assertion that defendants "allowed" retaliation to occur was insufficient to state a claim for supervisory liability).

**3.    Due Process Claim Related to the Charge of Simple Assault**

As noted above, Bonds received an institutional charge of simple assault upon a non-offender arising from the cell extraction that occurred on July 4, 2023. Although Bonds acknowledges that Hearing Officer Ramey dismissed the charge on the basis of "service violations," he nonetheless claims that she deprived him of due process during the course of

the disciplinary proceeding by failing to comply with his requests for witnesses and documentary evidence. Compl. at 29–30.

"In prison disciplinary proceedings, an incarcerated person is entitled to procedural protections, though less than the 'full panoply of rights' guaranteed in a criminal prosecution." Henderson v. Harmon, 102 F.4th 242, 248 (4th Cir. 2024) (quoting Wolff v. McDonnell, 418 U.S. 539, 556 (1974)). The procedural protections include "advanced written notice of the claimed violation," an opportunity "to call witnesses and present documentary evidence," and a "written statement of the factfinders as to the evidence relied upon and the reasons for the disciplinary actions taken." Wolff, 418 U.S. at 563, 566. "But procedural errors in prison proceedings are subject to harmless-error review." Henderson, 102 F.4th at 248 (citing Lennear v. Wilson, 937 F.3d 257, 276 (4th Cir. 2019)). And "in this context, prejudice is synonymous with harm." Id.; see also Lennear, 937 F.3d at 277 ("[F]ailure to comply with the Wolff requirements is harmless when it does not prejudice an inmate's preparation or defense at a hearing.") (quoting Brennan v. United States, 646 F. App'x 662, 666 (10th Cir. 2016)).

Bonds does not allege that he suffered any harm as a result of the lack of access to witnesses or evidence relevant to the assault charge. He alleges that Ramey "refuse[d] to turn over the evidence due to her dismissing the charge based upon unknown 'service violations.'" Compl. at 12 (emphasis added); see also id. at 29 (alleging that his requests were "responded to as dismissed by IHO Ramey K.D. for service violations"). Bonds does not plausibly suggest that he was sanctioned or otherwise punished for the dismissed charge. "The mere possibility of punishment if found guilty is not sufficient to state a claim for a constitutional violation." Sheppard v. Ariz. Dep't of Corr. Rehab. & Reentry, No. 21-422, 2021 WL 2270408, at *4 (D.

Ariz. May 19, 2021). Consequently, the due process claim related to the charge of simple assault must be dismissed.

### 4.    Claims of Failure to Investigate Asserted in Count One

As part of Count One, Bonds alleges that Lt. Massengill and Unit Manager Day deprived him of his constitutional rights by failing to investigate the events that occurred on July 20, 2023. See Compl. at 37 (alleging that Massengill "failed to investigate his subordinates' misconduct when they only allotted Bonds 10 minutes to eat his food"); id. at 38 (alleging that Massengill "failed to investigate his subordinates' misconduct when they did deny Bonds hot water to cook his meals"); id. at 38–38 (asserting the same allegations against Day). These claims are also subject to dismissal. In general, "there is no independent constitutional right to investigation of a third party." Gilliam v. Sealey, 932 F.3d 216, 240 (4th Cir. 2019). To the extent Bonds seeks relief for an alleged violation of his right to due process resulting from the failure to investigate grievances complaining about the events in question, he "does not have a federally protected liberty interest in having these grievances resolved to his satisfaction." Geiger v. Jowers, 404 F.3d 371, 374 (5th Cir. 2005). Thus, "any alleged due process violation arising from the alleged failure to investigate his grievances is indisputably meritless." Id.

### 5.    Excessive Fining Claims Asserted in Count Two

In Count Two, Bonds alleges that Warden White has been "excessively fining Bonds when he has been declared indigent by these courts." Compl. at 39. Bonds cites to a prior disciplinary proceeding that resulted in a $3.00 fine and a prior disciplinary proceeding that resulted in a $6.00 fine. Id. He alleges that defendants Ramey, Adams, Day, and Reynolds "have been imposing these fines as well" and that defendant Clarke "has been excessively

fining Bonds since he has been in the custody of the VDOC." Id. at 39–40. Earlier in the

complaint, Bonds alleges that he received a $6.00 fine for disobeying a direct order to return

to general population, a $4.00 fine for possession of contraband, and a $3.00 fine for

disobeying a direct order to return to general population. Id. at 26–27.

The Eighth Amendment provides that "[e]xcessive bail shall not be required, no

excessive fines imposed, nor cruel and unusual punishment inflicted." U.S. Const. amend.

VIII. The Excessive Fines Clause "limits the government's power to extract payments,

whether in cash or in kind, as punishment for some offense." United States v. Bajakajian, 524

U.S. 321, 328 (1998). "The touchstone of the constitutional inquiry under the Excessive Fines

Clause is the principal of proportionality: The amount of the forfeiture must bear some

relationship to the gravity of the offense that it is designed to punish." Id. at 334. In Bajakajian,

the Supreme Court held that "a punitive forfeiture violates the Excessive Fines Clause if it is

grossly disproportionate to the gravity of a defendant's offense." Id.

The VDOC's offender disciplinary procedure and code of disciplinary offenses are set

forth in Operating Procedure (OP) 861.1. See OP 861.1 (eff. Apr. 1, 2016), available at

https://web.archive.org/web/20230203190317/https://vadoc.virginia.gov/general-

public/operating-procedures (last visited Apr. 16, 2025).[2] The penalties that may be imposed

for disciplinary offenses include a fine of up to $15.00. OP 866.1 § VI(4). Bonds has not

plausibly alleged that the lower fines of which he complains were "grossly disproportionate"

to the gravity of the corresponding offenses. Bajakajian, 524 U.S. at 328. The mere fact that

---

[2] Although OP 866.1 is not part of the current record, the court is entitled to take judicial notice of it. See
Gordon v. Schilling, 937 F.3d 348, 353 n.6 (4th Cir. 2019).

Bonds has been granted leave to proceed in forma pauperis in previous cases is insufficient to establish that any of the defendants violated the Excessive Fines Clause. See, e.g., Pimentel v. City of Los Angeles, 115 F.4th 1062, 1073 (9th Cir. 2024) (declining to incorporate an evaluation of a person's ability to pay into the Excessive Fines analysis); United States v. Viloski, 814 F.3d 104, 112 (2d Cir. 2016) (holding that "courts may not consider as a discrete factor a defendant's personal circumstances, such as age, health, or present financial condition, when considering whether a criminal forfeiture would violate the Excessive Fines Clause"). For these reasons, the "excessive fining" claims asserted in Count Two will be dismissed.

### 6.    Meal-Related Claims Asserted in Count Three

As part of Count Three, Bonds alleges that Correctional Officer Branham and Correctional Officer D. Mullins violated the Eighth Amendment on July 20, 2023, by only giving him ten minutes to eat his meal. Compl. at 48–49. He claims that Lt. Massengill and Hearing Officer Ramey violated the Eighth Amendment by failing to investigate the "inhumane treatment" by Branham and Mullins. Id. at 49.

The Eighth Amendment's prohibition of cruel and unusual punishment "applies to claims by prisoners against corrections officials challenging conditions of confinement." Porter v. Clarke, 923 F.3d 348, 355 (4th Cir. 2019). "Like any other Eighth Amendment claim, an Eighth Amendment conditions of confinement claim has (1) objective and (2) subjective components." Id. (internal quotation marks omitted). To satisfy the objective component, a prisoner must set forth facts showing that the deprivation alleged was sufficiently serious. Id. "Only extreme deprivations" are sufficient to satisfy this component. De'Lonta v. Angelone, 330 F.3d 630, 634 (4th Cir. 2003). In particular, "a prisoner must allege a serious or significant

physical or emotional injury resulting from the challenged conditions" or "demonstrate a substantial risk of such serious harm resulting from the prisoner's exposure to the challenged conditions." Id. To satisfy the subjective component, an inmate must show that the prison official "actually kn[ew] of and disregard[ed] an excessive risk to inmate health or safety." Farmer v. Brennan, 511 U.S. 825, 837 (1994). Deliberate indifference is an "exacting standard" that is not met by a showing of "mere negligence or even civil recklessness." Jackson v. Lightsey, 775 F.3d 170, 178 (4th Cir. 2014).

Applying these standards, the court concludes that the allegations against Branham, D. Mullins, Massengill, and Ramey fail to state a plausible Eighth Amendment violation. Bonds does not allege that he suffered any harm as a result of only having ten minutes to eat his meal on July 20, 2023, and the complaint does not set forth facts sufficient to show that any of these defendants actually knew of and disregarded a substantial risk of serious harm. To the extent Bonds alleges that a prison policy "requires 20 minutes for an inmate to eat," Compl. at 48, a mere violation of an internal policy is not in itself sufficient to support an Eighth Amendment claim. See Estate of Simpson v. Gorbett, 863 F.3d 740, 746 (7th Cir. 2017) (rejecting the contention that a policy violation supported the inference that the defendants violated the Eighth Amendment); Mason v. Lafayette City-Parish Consol. Gov't, 806 F.3d 268, 279 (5th Cir. 2015) (explaining that "[a] failure to follow official policy, by itself shows, at most, negligence and cannot support a finding of deliberate indifference").

Additionally, only persons who cause or participate in a constitutional violation can be held liable under § 1983. George v. Smith, 507 F.3d 605, 609 (7th Cir. 2007). Mere knowledge of an event after the fact is insufficient to incur liability. Iqbal, 556 U.S. at 676. Thus, the

alleged failure to investigate the incident that occurred on July 20, 2023, does not give rise to a cause of action under § 1983 against Massengill or Ramey. Accordingly, the meal-related claims asserted in Count Three must be dismissed.

### 7.    Religion-Related Claims Asserted in Count Four

As part of the "discrimination" claims asserted in Count Four, Bonds alleges that various defendants denied him his SRD meal "as a Muslim" on July 4, 2023, by not providing "boiling hot water" with the meal. Compl. at 49–50, 54. Similarly, Bonds alleges that Correctional Officers Branham and D. Mullins denied him his SRD meal "as a Muslim" on July 20, 2023, and denied him enough time to eat his meal "based upon his religious conviction." Id. at 53. Bonds further alleges that Lt. Massengill and Hearing Officer Ramey discriminated against him "based upon his religious conviction (as a Muslim)" by failing to investigate his complaint that he did not receive adequate time and water to eat his SRD meal on July 20, 2023. Id.

The court liberally construes Bonds's allegations of religious discrimination as an attempt to invoke his right to equal protection. The Equal Protection Clause of the Fourteenth Amendment provides that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. "It is 'essentially a direction that all persons similarly situated should be treated alike.'" Grimm v. Gloucester Cnty. Sch. Bd., 972 F.3d 586, 606 (4th Cir. 2020) (quoting City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985)). To establish a violation of the Equal Protection Clause, "a plaintiff must plead sufficient facts to demonstrate plausibly that he was treated differently from others who

were similarly situated and that the unequal treatment was the result of discriminatory animus."
Equity in Athletics, Inc. v. Dep't of Educ., 639 F.3d 91, 108 (4th Cir. 2011).

Bonds's complaint does not contain sufficient allegations to satisfy these elements. He does not allege that he was treated differently from other inmates who were similarly situated or "in all relevant respects alike." Nordlinger v. Hahn, 505 U.S. 1, 10 (1992). Nor does he plead enough facts to plausibly demonstrate that any unequal treatment was the result of intentional or purposeful discrimination. None of the allegations in the complaint suggest that the defendants acted with an intent to discriminate against Bonds because of his Sunni Muslim beliefs. See Burke v. Clarke, 842 F. App'x 828, 838 (4th Cir. 2021) (affirming the dismissal of an equal protection claim where the plaintiff's allegations failed to establish that the VDOC applied a policy with discriminatory intent against Rastafarians); Fluker v. King, 679 F. App'x 325, 329 (5th Cir. 2017) (concluding that prison officials were properly granted summary judgment on an equal protection claim since the plaintiff did "not point[] to any evidence indicating that [the defendants'] motivation for treating him differently was invidious religious discrimination"). His conclusory assertions of discrimination based on his religion are insufficient to withstand dismissal for failure to state a claim. See Pronin v. Johnson, 628 F. App'x 160, 164 (4th Cir. 2015) ("Though a valid claim for a violation of equal protection need not allege discrimination as the defendant's sole motive, it must allege the requisite discriminatory intent with more than mere conclusory assertions.").

Bonds's allegations are also insufficient to state a claim for relief under the Free Exercise Clause of the First Amendment. The Free Exercise Clause "forbids the adoption of laws designed to suppress religious beliefs or practices." Morrison v. Garraghty, 239 F.3d 648,

656 (4th Cir. 2021). Under the Free Exercise Clause, an inmate has a "right to a diet consistent with his . . . religious scruples." Wall v. Wade, 741 F.3d 492, 498 (4th Cir. 2014). However, "evidence that a correction official negligently failed to comply with an inmate's sincerely held religious beliefs does not establish a Free Exercise Clause claim under § 1983." Mbonyunkiza v. Beasley, 956 F.3d 1048, 1055 (8th Cir. 2020). Likewise, courts have held that "an isolated, intermittent, or otherwise de minimis denial or interruption of an inmate's religiously required diet does not substantially burden his religious belief" in violation of the Free Exercise Clause. Id. at 1054 (collecting cases); see also Morgan v. Patterson, 772 F. App'x 117, 119 (5th Cir. 2019) (emphasizing that the plaintiff "alleged only isolated incidents resulting in the denial of kosher meals, which are insufficient to state a First Amendment claim"); Colvin v. Caruso, 605 F.3d 282, 293 (6th Cir. 2010) (finding no First Amendment violation where the plaintiff alleged only isolated incidents of being served non-kosher food).

In this case, the complaint indicates that Bonds received SRD meals to accommodate his religious beliefs as a Sunni Muslim. He does not plausibly allege that the defendants' actions on July 4, 2023, and July 20, 2023, burdened—much less substantially burdened—his ability to practice his religion. His allegations of isolated or intermittent incidents of not receiving boiling water to cook certain foods, or more than ten minutes to eat, fail to state a cognizable claim under the First Amendment against any of the named defendants. For these reasons, the meal-related claims asserted as part of Count Four must be dismissed.

### 8.    Disability Discrimination Claims Asserted in Count Four

Bonds also asserts claims of disability discrimination arising from the use of force on July 4, 2023. He claims that various defendants "discriminated against [him] for not being able

to kneel" as a result of a disabling impairment. Compl. at 51–52. He also claims that Nurse Practitioner L. Jessee was "systematically responsible for the discrimination" because she failed to properly document his disabilities. Id. at 52.

The claims of disability discrimination must be dismissed. To the extent the complaint asserts violations of Bonds's right to equal protection, it fails to plead facts sufficient to plausibly demonstrate that Bonds was treated differently than similarly situated individuals on the basis of his disabilities.[3] To the extent the complaint can be construed to allege that the defendants violated Title II of the Americans with Disabilities Act, that claim always fails because Title II "does not provide for individual capacity suits against state officials."[4] Barnes v. Young, 565 F. App'x 272, 273 (4th Cir. 2014) (internal quotation marks and alterations omitted).

## B.   Severance of Remaining Claims

The remaining claims arise from entirely different events—the cell extraction and transfer to the medical unit on June 4, 2023; the altercation with another inmate and related disciplinary charge on July 18, 2023; and the disciplinary charge for tampering with a security device on July 20, 2023. Given the number of different defendants and claims, the court concludes that allowing all of the remaining claims to proceed in a single action would be unwieldy, inefficient, and potentially prejudicial to both sides and that it would effectively allow

---

[3] The same is true for any claim of discrimination on the basis of "race, color, sex or national origin" referenced in the opening paragraph of the complaint. The vague and conclusory references to racism or other forms of discrimination do not suffice to state a claim upon which relief may be granted. See Williams v. Hansen, 326 F.3d 569, 584 (4th Cir. 2003 (noting that "a valid claim for a violation of equal protection . . . must allege the requisite discriminatory intent with more than mere conclusory assertions").

[4] The complaint indicates that that the defendants are sued in their individual capacities. See Compl. at 1.

Bonds to circumvent the requirements of the Prison Litigation Reform Act. Accordingly, the court will exercise its discretion to sever the remaining claims in order to ensure that the claims can be addressed in an efficient and orderly fashion. The present case shall include only the remaining claims arising from the cell extraction and transfer to the medical unit on July 4, 2023. The other remaining claims will be severed into two separate civil actions for all future proceedings. The new cases will be conditionally filed, and Bonds will be required to consent to payment of a filing fee, as he has done in this action. If Bonds does not wish to proceed with a particular action, he may file a motion for voluntary dismissal without prejudice.

## IV.    Conclusion and Order

For the reasons set forth above, it is hereby **ORDERED** as follows:

1.    The following claims are **DISMISSED** without prejudice for failure to state a claim upon which relief may be granted: (1) the meal-related claims asserted in Count One, (2) the retaliation claims asserted in Count One against Clarke and White, (3) the due process claim asserted in Count One related to the disciplinary charge of simple assault, (4) the claims of failure to investigate asserted in Count One, (5) the excessive fining claims asserted in Count Two, (6) the meal-related claims asserted in Count Three, (7) the religion-related claims asserted in Count Four, (8) the disability discrimination claims asserted in Count Four, and (9) the claim of "race, color, sex or national origin" discrimination referenced in the opening paragraph of the complaint.

2.    The remaining claims are **SEVERED** into separate civil actions for all future proceedings, as described below.

3.      The present case (No. 7:23-cv-00583) shall consist of the remaining claims arising from the cell extraction and transfer that occurred on July 4, 2023, during which correctional officers allegedly used excessive force. This action shall proceed against the following defendants: Rick White, Sgt. Lewis, Correctional Officer J. Eldridge, Lt. Meade, Sgt. Bentley, Lt. Phipps, Sgt. Allen, Correctional Officer G. Perry, Correctional Officer J. Boyd, Correctional Officer M. Mullins, Sgt. Jones, Correctional Officer J. Butcher, Correctional Officer Dotson, and L. Jessee. The Clerk shall terminate all other defendants as parties to this action.

4.      The Clerk is **DIRECTED** to conditionally file a copy of the complaint, ECF No. 1, in a new and separate civil case that shall include the claims arising from the altercation with another inmate and the related disciplinary charge on July 18, 2023. The Clerk shall list the following individuals as defendants in the new case: Correctional Officer J. Eldridge, Hearing Officer J. Adams, and Lt. C. Stanley.

5.      The Clerk is **DIRECTED** to conditionally file a copy of the complaint, ECF No. 1, in a new and separate civil case that shall include the claims arising from the disciplinary charge for tampering with a security device on July 20, 2023. The Clerk shall list the following individuals as defendants in the new case: Correctional Officer A. Branham, Correctional Officer D. Mullins, and Hearing Officer K.D. Ramey.

6.      In the new cases, the Clerk shall file a copy of this memorandum opinion and order as an attachment to the complaint. The Clerk shall also docket a copy of

22

the trust account report and statement of assets filed in this case, ECF Nos. 2 and 5.

7.     The new cases will be conditionally filed, and a separate conditional filing order will be entered. Bonds will be required to consent to the collection of a filing fee in the new cases through installment payments from his inmate trust account. The amount of the required initial payment will be the same in the new case as it was in this case: $7.35. Failure to return an executed consent form within the time period set forth in the conditional filing order will result in the dismissal of that case without prejudice.

The Clerk is directed to send a copy of this memorandum opinion and order to Bonds, along with a copy of the docket sheet in all three cases.

It is so **ORDERED**.

Entered: April 29, 2025

Michael F. Urbanski
U.S. District Judge
2025.04.29
17:48:18 -04'00'

Michael F. Urbanski
Senior United States District Judge

23